**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Evelyn Salt, | No. CV-22-08139-PCT-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Office of Navajo and Hopi Indian Relocation, | |
| Defendant. | |

The parties have filed cross-motions for summary judgment.  (Docs. 17; 19).[1] Plaintiff Evelyn Salt ("Plaintiff") seeks relief from a denial of relocation assistance benefits under the Navajo–Hopi Settlement Act by Defendant Office of Navajo and Hopi Indian Relocation ("ONHIR" or "Defendant").  The Court must decide whether Plaintiff was a resident of the Hopi Partitioned Lands ("HPL") when she became head of household in August of 1975.  She was not.  The Court accordingly grants Defendant's Motion for Summary Judgment and denies Plaintiff's Motion.

**I.      Background**

Plaintiff is an enrolled member of the Navajo Nation.  (Doc. 1 at ¶ 5).  She was relocated from her home on the HPL[2] to the Navajo Partitioned Lands ("NPL") as a result of the Navajo–Hopi Settlement Act ("Act"), 25 U.S.C. § 640d *et seq.*  (*Id.*)  Congress created ONHIR, an independent federal agency, to carry out the relocation of Navajo and

---

[1] The matter is briefed.  Plaintiff filed a Response (Doc. 21), and Defendant filed a Reply (Doc. 23).

[2] Plaintiff's HPL site is also referred to as Red Lake.

1  Hopi Tribal Members who resided on land that was partitioned to the other tribe, and to

2  provide relocation assistance benefits for all households required to relocate. (*Id.* at ¶ 6).

3  Plaintiff's family moved from the HPL to the NPL in 1976. (*Id.* at ¶ 23).

4  On April 22, 2009, Plaintiff applied for relocation benefits under 25 C.F.R. §

5  700.138. (*Id.* at ¶ 7). Her application was denied. (*Id.* at 8). Plaintiff filed an appeal,

6  and a hearing was held on April 29, 2016. (Doc. 1 at ¶ 9–10).

7  The Independent Hearing Officer ("IHO") issued a decision on July 8, 2016,

8  upholding ONHIR's denial of relocation benefits. (*Id.* at ¶ 12). The IHO found that as of

9  December 22, 1974, Plaintiff "was a legal resident of the Red Lake Chapter, whose

10  cornfield was later partitioned for the use of the Hopi Indians," and on that date, Plaintiff

11  "was living in Albuquerque, New Mexico and attending a free vocational school." (Doc.

12  13 at 262). He concluded that Plaintiff was not a self-supporting head of household on

13  December 22, 1974, because "she was living in a school dormitory where her basic

14  personal needs for food and shelter were provided by others." (*Id.*)

15  However, the IHO ultimately concluded that Plaintiff's legal residence transferred

16  to Albuquerque "upon her completion of her vocational education in 1975." (*Id.*) The

17  IHO therefore denied Plaintiff's appeal. (*Id.*) ONHIR then issued its Final Agency

18  Action affirming the IHO's denial determination. (Doc. 1 at ¶ 12).

19  On July 28, 2022, Plaintiff filed her Complaint, requesting this Court to reverse

20  ONHIR's decision and find Plaintiff eligible for relocation assistance benefits. (*Id.*)

21  **II.    Legal Standard**

22  Under the Administrative Procedure Act ("APA"), an aggrieved party may sue to

23  set aside a final non-discretionary agency action that is arbitrary or capricious, an abuse

24  of discretion, or otherwise not in accordance with the law. *See* 5 U.S.C. §§ 702,

25  706(2)(A), (2)(E). "[T]he reviewing court can reverse only if the agency action was

26  arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported

27  by substantial evidence." *Bedoni v. Navajo–Hopi Indian Relocation Com'n*, 878 F.2d

28  1119, 1122 (9th Cir. 1989).

1    An agency action is arbitrary and capricious "if the agency has relied on factors
2  which Congress has not intended it to consider, entirely failed to consider an important
3  aspect of the problem, offered an explanation for its decision that runs counter to the
4  evidence before the agency, or is so implausible that it could not be ascribed to a
5  difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S.*
6  *v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  "The arbitrary and capricious
7  standard is highly deferential, presuming the agency action to be valid and [requires]
8  affirming the agency action if a reasonable basis exists for its decision."  *Kern County*
9  *Farm Bureau v. Allen*, 450 F.3d 1072, 1076 (9th Cir. 2006) (internal citation omitted).

10    When the court conducts judicial review under the APA, "summary judgment is
11  an appropriate mechanism for deciding the legal question of whether the agency could
12  reasonably have found the facts as it did."  *Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766,
13  770 (9th Cir. 1985).  However, the agency is the fact finder and the court's role "is to
14  determine whether or not as a matter of law the evidence in the administrative record
15  permitted the agency to make the decision it did."  *Id.* at 769.

16  **III.   Discussion**

17    Plaintiff raises two arguments: (1) The IHO failed to properly apply the
18  "temporarily away" policy in determining that Plaintiff was not a legal resident of the
19  HPL; and (2) the IHO erred in discrediting Plaintiff's testimony about her return visits to
20  Red Lake. (Doc. 17 at 8–18). Plaintiff thus contends ONHIR's denial of relocation
21  benefits was arbitrary and capricious and unsupported by substantial evidence. (*Id.*)

22  **A. Objection to Extra-Record Document**

23    As a threshold matter, Defendant objects to the extra-record documents attached as
24  Exhibit A to Plaintiff's Motion for Summary Judgment.  (Doc. 17-1 at 1–11).

25    A reviewing court generally may not consider extra-record documents. *See Lands*
26  *Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005).  However, "narrowly construed
27  and applied exceptions" permit a court to admit extra-record documents: (1) if admission
28  is necessary to determine whether the agency has considered all relevant factors and has

1    explained its decision, (2) if the agency has relied on documents not in the record, (3)

2    when supplementing the record is necessary to explain technical terms or complex

3    subject matter, or (4) when plaintiffs make a showing of agency bad faith.  *Id.* (quotations

4    and citations omitted); *Fence Creek Cattle Co. v. U.S. Forest Serv.*, 602 F.3d 1125, 1131

5    (9th Cir. 2010).

6         Here, Exhibit A includes ONHIR's relocation benefits application evaluation for

7    Plaintiff's brother.  (Doc. 17-1 at 1–11).  Plaintiff argues the Exhibit shows that her

8    brother returned to the HPL while attending Northern Arizona University "during breaks

9    and school holidays during the school years," which was less often than Plaintiff's return

10   visits to Red Lake when she was in Albuquerque.  (Doc. 21 at 12).  Plaintiff further

11   maintains that despite her brother having fewer visits than Plaintiff, ONHIR certified

12   Plaintiff's brother as eligible for relocation benefits. (*Id.*)  Although Plaintiff fails to

13   articulate which narrow exception applies, the Court interprets her assertions as an

14   argument that admission is necessary to determine whether ONHIR has considered all

15   relevant factors and has explained its decision.

16        Defendant argues the Court should reject Plaintiff's Exhibit under *Tso v. Off. of*

17   *Navajo & Hopi Indian Relocation* because the Exhibit offers "only a limited snapshot

18   into the administrative record."  (Doc. 23 at 6 citing 2019 WL 1877360, at *8 (D. Ariz.

19   Apr. 26, 2019)).  Defendant misapprehends *Tso*.  There, the court rejected the plaintiff's

20   attempt to admit five prior written decisions by the IHO because those decisions offered

21   "only a limited snapshot into the administrative record of those *five unrelated relocation*

22   *benefits cases*." *Tso*, 2019 WL 1877360, at *8 (emphasis added).  Here, Plaintiff's

23   brother's relocation application is not unrelated and is relevant insofar as both Plaintiff

24   and her brother temporarily left the HPL for education and work.  The Court will

25   therefore supplement the record with this Exhibit.

26   **B. Plaintiff's Residency**

27        Under the Act, the applicant bears the burden of establishing, on December 22,

28   1974, they were (1) "the head of household" and (2) a legal resident "of an area

- 4 -

1   partitioned to the Tribe of which they were not [a] member[]." 25 C.F.R. § 700.147(a–b).

2   Here, the parties stipulated that Plaintiff attained head-of-household in August of 1975.

3   (Docs. 17 at 10; 19 at 3).  Plaintiff's residency in August of 1975 is the sole issue.

4   The term "residence" in the final rule "requires an examination of a person's intent

5   to reside combined with manifestations of that intent."  49 Fed. Reg. 22, 278; *see also*

6   *Charles v. Off. of Navajo & Hopi Indian Relocation*, 774 Fed. Appx. 389, 390 (9th Cir.

7   2019). Such manifestations of intent may include ownership of livestock, ownership of

8   improvements, grazing permits, livestock sales receipts, homesite leases, medical records,

9   school records, employment records, mailing address records, banking records, voting

10   records, census data, court records, the Joint Use Area roster, and any other relevant data.

11   49 Fed. Reg. 22, 278.

12   The "temporarily away" policy provides that if a plaintiff temporarily left the HPL

13   to pursue education, a plaintiff "can still establish [her] legal residency by showing

14   substantial and recurring contacts with [her] home within the HPL."[3]  *See Tso*, 2019 WL

15   1877360, at *4.  The issue is whether Plaintiff maintained "substantial and recurring

16   contacts" with the HPL site while attending Southwestern Indian Polytechnic Institute

17   ("SIPI") in Albuquerque such that she was still a resident of the HPL in August of 1975

18   when she attained head of household.

19   Plaintiff argues that she satisfied the legal resident requirement for two reasons.

20   First, she argues her schooling in Albuquerque falls under the "temporarily away" policy.

21   (Doc. 17 at 8).  Second, she argues the IHO's failure to find Plaintiff a legal resident of

22   the HPL was arbitrary and capricious because ONHIR certified her mother and her

23

24   [3] The parties dispute whether the IHO applied the correct legal standard to Plaintiff's residency consideration.  (Doc. 17 at 5, 11; Doc. 19 at 12).  Plaintiff cites *Charles* to argue the substantial and recurring contacts standard is no longer the correct standard

25   under current regulations. 774 F. App'x at 390.  Nowhere in the non-binding memorandum disposition, however, did the Ninth Circuit state the substantial and

26   recurring contacts standard did not apply to the "temporarily away" policy. *Id.*  Further, notwithstanding this disposition, courts in this district have still applied the substantial

27   and recurring contacts standard to determine whether an applicant satisfied ONHIR's "temporarily away policy." *See Barton v. Off. of Navajo & Hopi Indian Relocation*, 2023

28   WL 2991627, at *3 (D. Ariz. Apr. 18, 2023); *Begay v. Off. of Navajo & Hopi Indian Relocation*, 2022 WL 3285443, at *2 (D. Ariz. Aug. 11, 2022).

1    brother.  (*Id.* at 12).  The Court is unpersuaded.

2              **1. Temporarily Away Policy**

3          Plaintiff argues her schooling in Albuquerque falls under the "temporarily away"

4    policy and that the IHO ignored that she maintained her chapter membership at Red

5    Lake; returned to Red Lake to vote; and kept her belongings in the family's shack on the

6    HPL until that shack was moved to the NPL in 1976.  (Doc. 17 at 11).

7          The IHO found there was a "serious question about whether [Plaintiff's] absence

8    from Red Lake was temporary and, more importantly, whether she maintained

9    'substantial' contacts with her family's home" while obtaining her education in

10   Albuquerque.  (Doc. 13 at 263).  The IHO ultimately concluded Plaintiff did not maintain

11   substantial and recurring contacts with Red Lake to be considered as having retained that

12   area as her legal residence by the time she attained head of household status in August of

13   1975.  (*Id.* at 262).  The evidence in the record adequately supported this finding.

14         The IHO found Plaintiff's visits to Red Lake were "quixotic and arduous—a 24-

15   hour trip each way on a Greyhound bus . . . at a cost of $36.00 each time."  (*Id.* at 264).

16   He noted that Plaintiff's visits were "brief and primarily social," citing to Plaintiff's

17   testimony about being homesick.  (*Id.*)  The IHO reasoned that the practical

18   impediments—the bus travel from Albuquerque to Flagstaff, finding a ride or hitchhiking

19   to Tuba City, finding a subsequent ride or hitchhiking to Red Lake, then repeating the

20   process—discredited Plaintiff's claim of visiting once a month.  (*Id.*)  The IHO further

21   stated the emotional reasons for visitation, presumably Plaintiff being homesick,

22   outweighed any claim that her visits, "however rare, [were] either substantial or regularly

23   recurring."  (*Id.*)

24         The IHO further reasoned that after Plaintiff's graduation from SIPI she obtained

25   an apartment in Albuquerque, a New Mexico driver's license, a job, and a vehicle.  (*Id.*)

26   The IHO found the "materiality of her living situation in Albuquerque" far outweighed

27   her nominal visits to Red Lake.  (*Id.*)  He rejected Plaintiff's claims that she cleaned on

28   the weekends to pay for her Greyhound bus fare because she could not clean and take the

1    Greyhound back to Red Lake on the same weekend.  (*Id.* at 265).  He thus found her

2    claim about maintaining substantial and recurring contacts with Red Lake while working

3    and until her family abandoned the HPL cornfield was "entirely unbelievable."  (*Id.*)  The

4    IHO therefore concluded the preponderance of evidence demonstrated Plaintiff's legal

5    residence was in Albuquerque at the time she became a self-supporting head of

6    household in August of 1975.  (*Id.* at 267).

7         Although Plaintiff argues she kept her personal belongings at the HPL and she

8    returned home to vote for tribal elections, her mother's testimony belies Plaintiff's

9    claims.   Indeed, her mother testified that before they moved to the Navajo side none of

10   Plaintiff's belongings were kept on the Hopi side.  (*Id.* at 178).  Even if, however,

11   Plaintiff's mother had not contradicted Plaintiff's claim, the IHO found Plaintiff's visits

12   so infrequent that it would have been immaterial if she kept personal belongings at Red

13   Lake. (*Id.* at 266).  As to Plaintiff voting in tribal elections, Defendant notes that the Red

14   Lake Chapter contained HPL, NPL, and Bennett Freeze lands and thus voting is not an

15   activity tied to the HPL. (*Id.* at 208).  Defendant supports this argument by citing to the

16   family's Bureau of Indian Affairs Enumeration, which shows the Red Lake Chapter

17   contained HPL, NPL, and Bennett Freeze lands.  (*Id.*)  But even if Plaintiff's Red Lake

18   Chapter membership could support a contrary conclusion, the IHO reasonably concluded

19   from the evidence in the record that by August of 1975, Plaintiff's contacts with Red

20   Lake were not substantial and recurring and that she was a resident of New Mexico.

21        The Court further notes Plaintiff introduced scant evidence regarding

22   manifestations of her intent to reside on the HPL at the time she graduated from SIPI in

23   August of 1975.   Indeed, the record contains no evidence of personal livestock

24   ownership, grazing permits, homesite leases, or any improvements enumerated on the

25   HPL. (Doc. 13 at 260–261).  Plaintiff also introduced no evidence of public health

26   records, school records, military records, employment records, mailing address records,

27   banking records, driver's license records, or other relevant data manifesting her intent to

28   remain or reside at the HPL site.   49 Fed. Reg. 22, 278.

1    Under the "highly deferential" standard of the APA, the Court finds the IHO

2    provided a rational explanation for why the temporarily away policy did not apply here

3    and that "a reasonable basis exists for [his] decision." *Kern County Farm Bureau*, 450

4    F.3d at 1076; *see also Tso*, 2019 WL 1877360, at \*4 (finding the "temporarily away"

5    policy did not apply because any visits plaintiff made to the HPL were "social and

6    incidental" and not enough to show substantial and recurring contacts for the exception to

7    apply).

8    **2.  Similarly Situated Family Members**

9    Plaintiff further argues that the IHO's decision is arbitrary and capricious because

10   the IHO certified Plaintiff's mother and brother for relocation benefits but not Plaintiff.

11   (Doc. 17 at 12).  To support this proposition, Plaintiff cites *Mike ex rel. Mike v. Off. of*

12   *Navajo & Hopi Indian Relocation*, where the court found employment was a valid reason

13   for being temporarily away from a legal residence.  (*Id.* citing 2008 WL 54920, at \*1 (D.

14   Ariz. Jan. 2, 2008)).  In accordance with this decision, Plaintiff argues the IHO should

15   have applied that same policy to her case because ONHIR found it applied to Plaintiff's

16   brother while he was away from Red Lake for his education and employment.  (Doc. 17

17   at 15).  The Court is unconvinced.

18   Plaintiff's case is distinguishable from her mother and her brother's factual

19   circumstances.  ONHIR's "obligation is only that the agency applies the law consistently

20   to cases with similar material facts; it does not require the agency find the same facts for

21   different parties, in different proceedings, and based on different evidence." *Daw v.*

22   *Office of Navajo & Hopi Indian Relocation*, 2020 WL 5632121, at \*4 (D. Ariz. Sep. 18,

23   2020) (internal citation omitted).  First, as to Plaintiff's mother, no evidence in the record

24   indicates ONHIR applied the temporarily away policy to her case.  Second, as to

25   Plaintiff's brother, ONHIR concluded he attended Northern Arizona University but

26   dropped out of college "after May 1974" and then worked as a fire fighter from the

27   family's HPL home from June to August of 1974.  (Doc. 17-1 at 3).  Plaintiff's brother

28   worked for a Navajo Communications Company for the remainder of 1974 on the Navajo

1   Reservation.  (*Id.*)  These findings imply ONHIR found Plaintiff's brother did not

2   establish a legal residence outside the HPL because he dropped out of school and

3   returned home.  Plaintiff, on the other hand, graduated from SIPI and then continued to

4   live and work in New Mexico.  She obtained a New Mexico driver's license, bought a

5   vehicle, rented an apartment in Albuquerque, and spent most of her time there.  (Doc. 13

6   at 264).  Plaintiff's correct that employment is a valid reason for being temporarily away,

7   but Plaintiff maintained her employment in Albuquerque until 1991, far longer than her

8   brother's brief employment absence.  (*Id.* at 64).  Plaintiff's factual circumstances plainly

9   differ from her brother's and the IHO must base his decision on the record before him.

10  *See Daw*, 2020 WL 5632121, at \*4 (rejecting plaintiff's argument that an IHO's prior

11  findings controlled his later findings); *Akee v. Off. of Navajo & Hopi Indian Relocation*,

12  907 F. Supp. 315, 319 (D. Ariz. 1995), *aff'd*, 107 F.3d 14 (9th Cir. 1997) (finding

13  ONHIR need not explain the reason it denied relocation benefits to plaintiff while

14  granting benefits to others when the cases are distinguishable).

15      **C.  IHO's Credibility Findings**

16          Last, Plaintiff argues the IHO's credibility findings are not supported by

17  substantial evidence and that he cherry-picked from the record rather than engaging in a

18  holistic review.  (Doc. 17 at 15–18).  She argues the IHO erred in finding her return visits

19  to Red Lake from Albuquerque were not credible.  (*Id.*)  Defendant argues substantial

20  evidence supports the IHO's credibility determinations.  (Doc. 19 at 17).

21          The substantial evidence standard governs when reviewing an IHO's credibility

22  findings.  This is often described as "more than a mere scintilla, but less than a

23  preponderance."  *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995).  If "the decision of

24  an ALJ rests on a negative credibility evaluation, the ALJ must make findings on the

25  record and must support those findings by pointing to substantial evidence on the record."

26  *Ceguerra v. Secretary of Health & Hum. Servs.*, 933 F.2d 735, 738 (9th Cir. 1991).

27          "[I]f an ALJ has grounds for disbelieving material testimony, it is both reasonable

28  and desirable to require the ALJ to articulate those grounds in the original decision."  *Id.*

1   at 740 (citing *Varney v. Secretary of Health & Hum. Servs.*, 859 F.2d 1396, 1399 (9th

2   Cir. 1988)).   But an IHO's "credibility findings are granted substantial deference by

3   reviewing courts."   *Begay*, 305 F. Supp. 3d at 1049 (quoting *De Valle v. Immigr. &*

4   *Naturalization Serv.*, 901 F.2d 787, 792 (9th Cir. 1990)).   This deference stems from the

5   IHO being "in a position to observe [a witness]'s tone and demeanor, to explore

6   inconsistencies in testimony, and to apply workable and consistent standards in the

7   evaluation of testimonial evidence.  He[/she] is . . . uniquely qualified to decide whether a

8   [witness]'s testimony has about it the ring of truth."   *Id.* (quoting *Sarvia–Quintanilla v.*

9   *United States Immigr. & Naturalization Serv.*, 767 F.2d 1387, 1395 (9th Cir. 1985)

10   (alterations in original).

11          The Court finds the IHO's credibility findings regarding Plaintiff's return visits to

12   Red Lake are supported by substantial evidence.   As discussed, the IHO based his

13   determination on the length and cost of the trip from Albuquerque to Red Lake—"a 24-

14   hour trip each way on a Greyhound bus . . . at a cost of $36.00 each time."  (Doc. 13 at

15   263–64).   He noted that Plaintiff's visits were "brief and primarily social," citing to

16   Plaintiff's testimony about being homesick.  (*Id.*)   He reasoned that the practical

17   impediments—the bus travel from Albuquerque to Flagstaff, finding a ride or hitchhiking

18   to Tuba City, finding a subsequent ride or hitchhiking to Red Lake, then repeating the

19   process—discredited Plaintiff's claim of visiting once a month.  (*Id.*)   The IHO further

20   stated the emotional reasons for visitation, presumably Plaintiff being homesick,

21   outweighed any claim that her visits, "however rare, [were] either substantial or regularly

22   recurring."  (*Id.*)   Last, he highlighted that after Plaintiff's graduation from SIPI she

23   obtained an apartment in Albuquerque, a New Mexico driver's license, a job, and a

24   vehicle, thus concluding the "materiality of her living situation in Albuquerque" far

25   outweighed her nominal visits to Red Lake.  (*Id.*)

26          The IHO also questioned Plaintiff's testimony about the shack she slept in that

27   allegedly existed 1/4 miles from the family's home.  (*Id.* at 149; 267).   Plaintiff testified

28   there was a shack, corral, tent, and cornfield on the HPL, specifically stating the shack

1  was as big as the hearing room.  (*Id.* at 247; 161).  The IHO noted, however, that neither

2  a shack nor a corral was enumerated on HPL as being owned by any member of

3  Plaintiff's family.  (*Id.* at 267).  Given that the shack and corral were claimed to be within

4  1/4 mile of Plaintiff family's residence, the IHO found the BIA enumerators "would have

5  had to be blind to miss a structure as large as the described shack."  (*Id.* at 267).

6         The IHO's credibility findings should not be disturbed.  The IHO provided "more

7  than a mere scintilla" of evidence in support of his conclusions.  *Orteza*, 50 F.3d at 749.

8  Although Plaintiff argues her Red Lake Chapter membership demonstrates her visits

9  were not social in nature, "credibility findings are granted substantial deference" and the

10  "[IHO] is . . . uniquely qualified to decide whether [] testimony has about it the ring of

11  truth."  *Begay*, 305 F. Supp. 3d at 1049 (citations omitted).  Plaintiff may disagree with

12  how the IHO considered the evidence, but the Court finds the IHO had sufficient reason

13  to deem her testimony regarding her return visits not credible.  *See Orteza*, 50 F.3d at 749

14  (finding that the ALJ's decision "must be upheld" even if the evidence "is susceptible of

15  more than one rational interpretation").

16  **IV.  Conclusion**

17         For these reasons, the Court will deny Plaintiff's Motion for Summary Judgment

18  (Doc. 17) and grant Defendant's Cross-Motion for Summary Judgment (Doc. 19).  The

19  IHO's decision to deny Plaintiff's relocation benefits appeal, based on a lack of legal

20  residence in August of 1975, was supported by substantial evidence and not arbitrary and

21  capricious.

22         Accordingly,

23         **IT IS HEREBY ORDERED** that the Independent Hearing Officer's decision

24  dated July 14, 2016 (Doc. 13 at 258–67) is **affirmed**.

25         **IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment

26  (Doc. 17) is **denied**.

27         **IT IS FURTHER ORDERED** that Defendant's Cross-Motion for Summary

28  Judgement (Doc. 19) is **granted**.

1    **IT IS FINALLY ORDERED** that the Clerk of the Court shall enter judgment

2  accordingly and terminate this case.

3        Dated this 23rd day of June, 2023.

4

5

6                                            Honorable Diane J. Humetewa
                                             United States District Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28